Joshua S. Bratspies, Esq.
SHERMAN WELLS SYLVESTER & STAMELMAN LLP
1185 Avenue of the Americas, 3rd Floor
New York, New York 10036
jbratspies@shermanwells.com
(212) 763-6464

*Attorneys for Plaintiff*
*UBS Bank USA*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UBS BANK USA,<br><br>                    Plaintiff,<br><br>v.<br><br>BEANS & VINES CORP., EDSON FAMILIA and BEANS & VINES EXPRESS CORP.,<br><br>                    Defendants. | CIVIL ACTION NO.: |

**COMPLAINT**

Plaintiff UBS Bank USA ("UBS Bank"), by way of Complaint against defendants Beans & Vines Corp., Edson Familia and Beans & Vines Express Corp. (collectively, "Defendants"), alleges and seeks relief as follows:

**THE PARTIES**

1. UBS Bank is a federally regulated Utah industrial bank with its principal place of business at 299 South Main Street, Suite #2275, Salt Lake City, Utah 84111.

2. Upon information and belief, defendant Beans & Vines Corp. (the "Borrower") is a New York corporation having its principal place of business at 4799 Broadway, New York, NY 10034.

3. Upon information and belief, Edson Familia ("Mr. Familia") is a citizen of the State of New York with a resident address at 261 Seaman Avenue, New York, NY 10034.

4. Upon information and belief, defendant Beans & Vines Express Corp. ("B&V Express Corp.") is a New York corporation having its principal place of business at 4842 Broadway, New York, NY 10034.

5. Upon information and belief, Mr. Familia is a restauranteur and chef, and the sole principal of both the Borrower and B&V Express Corp. Upon further information and belief, Mr. Familia, through the Borrower, operated for many years a restaurant called "Beans & Vines" at 4799 Broadway in New York City, but the restaurant recently closed. Upon further information and belief, Mr. Familia currently operates through B&V Express Corp. another restaurant, "Beans & Vines Express" located at 4842 Broadway in New York City, which is marketed as a "revamped" and "renamed" version of the Borrower's now-defunct "Beans & Vines" restaurant (https://beansandvinesexpress.com/).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between UBS Bank and the Defendants.

7. Venue properly lies in this court pursuant to 28 U.S.C. §1391(a) on the basis of a certain agreements between UBS Bank, on the one hand, and the Borrower and Mr. Familia, on the other hand, which provide, among other things, that actions arising out of or related to such agreements between the parties shall be brought and maintained in this Court. Additionally, a substantial part of the events and omissions giving rise to UBS Bank's claims occurred in the federal district in which this Court resides.

**FACTUAL BACKGROUND**

A.  **The Loan To The Borrower**

8.  On or about January 29, 2016, Tri-State Business Opportunity Fund, LLC, a wholly owned subsidiary of Valley Economic Development Center, Inc. d/b/a The Los Angeles Business Development Corp. (the "Original Lender"), made a loan (the "Loan") to the Borrower in the principal amount of Two Hundred Forty Thousand and 00/100 Dollars ($240,000.00).  The Loan is evidenced by certain documents (collectively defined below as the "Loan Documents").

9.  To evidence its indebtedness under the Loan, the Borrower executed and delivered to the Original Lender a Loan Agreement, dated January 29, 2016 (the "Loan Agreement").

10.  To further evidence its indebtedness under the Loan, the Borrower executed and delivered to the Original Lender a Promissory Note, dated January 29, 2016 (the "Note"), in the principal amount of Two Hundred Forty Thousand and 00/100 Dollars ($240,000.00).

11.  Among other things, the Note requires the Borrower to make monthly interest, principal and loan servicing payments on the Loan.

12.  Specifically, pursuant to the Note, the Borrower was obligated to, among other things: (i) make consecutive monthly interest payments on the outstanding Loan, commencing on "the first full calendar month following the initial funding date for the Loans" and ending "on the maturity date" of the Loan; (ii) pay the outstanding principal of the Loan "in eighty-one (81) consecutive monthly installments" commencing on "the fourth calendar month after the Initial Funding Date" and with "all unpaid principal" on the Loan "repayable in full on the Maturity Date" of the Loan; and (iii) submit with each monthly interest and/or principal payment "a loan servicing fee equal to three quarters of one percent (0.75%) of each scheduled principal and/or interest payment."

13. The Note provides that the interest rate for the Loan shall be "a per annum variable interest rate equal to: (i) Libor plus (ii) eight and sixty three one-hundredths percent (8.63%), adjusted on the first day of each Interest Period."

14. Pursuant to the Note, the Borrower was obligated, among other things, to pay a late fee on any payment not made when due in an amount equal to 5.00% of the unpaid amount.

15. The Note further provides that, in the event of a default under the Loan Documents, interest on the unpaid principal amount of the Loan shall accrue interest at the "Default Rate," which is defined in the Loan Agreement as the lesser of: (i) the maximum interest rate permitted by applicable law; or (ii) 7.75% per annum above the standard interest rate in effect.

16. Moreover, the Note states that the Borrower "shall pay all fees and expenses of any nature, whether incurred in or out of court and whether incurred before or after this Note shall become due at is [sic] maturity date or otherwise, including, but not limited to, reasonable attorney's fees and costs" incurred by the Original Lender.

17. As security for repayment of the Loan and performance of the Borrower's obligations under the Note, the Borrower executed and delivered to the Original Lender a Security Agreement, dated January 29, 2016 (the "Security Agreement").

18. Pursuant to the Security Agreement, the Borrower, among other things, granted the Original Lender a security interest in all of the Borrower's assets, including, but not limited to, the following property: (i) equipment; (ii) fixtures; (iii) inventory; (iv) accounts; (v) instruments; (vi) chattel paper; (vii) general intangibles; (viii) documents; (ix) deposit accounts; (x) cash or cash equivalents; and (xii) other property as set forth in Section 3 of the Security Agreement (collectively, the "Borrower Collateral").

19. To further secure repayment of the Loan and performance of the Borrower's obligations under the Note, Mr. Familia executed and delivered to the Original Lender a Continuing Guaranty, dated as of January 29, 2016 (the "Guaranty Agreement").

20. Pursuant to the Guaranty Agreement, Mr. Familia irrevocably and unconditionally guaranteed the full and prompt payment when due of all amounts due and owing under the Loan and the Loan Documents.

21. Mr. Familia further agreed in the Guaranty Agreement to "pay Lender's reasonable attorney's fees and all other costs and expenses which may be incurred in connection with the administration of this Guaranty, the collection of any Guaranteed Obligations, the protection or preservation of, or realization on, any collateral securing any Guaranteed Obligations and the enforcement by Lender of this Guaranty and the other Loan Documents to which it is a party."

22. As further security for repayment of the Loan and performance of the Borrower's obligations under the Note, Mr. Familia executed and delivered to the Original Lender a Pledge Agreement, dated January 29, 2016 (the "Pledge Agreement").

23. Pursuant to the Pledge Agreement, Mr. Familia, among other things, granted the Original Lender a security interest in Mr. Familia's 100% equity interest in the Borrower (the "Familia Collateral", and together with the Borrower Collateral, the "Collateral").

24. Moreover, the Note and the other Loan Documents provide that the Original Lender may, without giving notice to the Borrower or obtaining the Borrower's consent, assign its rights under the Loan Documents to a third party, and that any such assignee shall become vested with and entitled to exercise all powers and rights given to the Original Lender under the Loan Documents.

**B.     The Amendment To The Loan Agreement And The Note**

25.    In or around July 2017, the Original Lender and the Borrower entered into an Amendment to Loan Agreement, dated July 21, 2017 (the "Amendment to Loan Agreement").

26.    In or around July 2017, the Original Lender and the Borrower also entered into an Amendment to Note, dated July 21, 2017 (the Amendment to Note").

**C.     Assignment Of The Loan And The Loan Documents To UBS Bank**

27.    In or around December 2019, the Original Lender assigned to UBS Bank a portfolio of loans, which included the Loan to the Borrower.

28.    In connection with this transaction, the Original Lender executed and delivered to UBS Bank an Assignment Agreement, dated December 30, 2019 (the "Assignment Agreement"), pursuant to which the Original Lender assigned to UBS Bank all of the Original Lender's rights, title and interests in, among other things, the Loan and the Loan Documents.

29.    The Original Lender also executed and delivered to UBS Bank a Master Allonge, dated December 30, 2019 (the "Master Allonge"), pursuant to which the Original Lender assigned to UBS Bank all of the Original Lender's rights, title and interests in, among other things, the Note.

30.    As a result of the foregoing assignments, UBS Bank is the owner and holder of all of the Loan Documents.

31.    The Loan Agreement, the Note, the Security Agreement, the Guaranty Agreement, Pledge Agreement, the Amendment to Loan Agreement, the Amendment to Note, the Assignment Agreement and the Master Allonge are collectively referred to herein as the "Loan Documents".

**D.     The Borrower Defaults Under The Loan Documents**

32.     Beginning in or around Spring 2020, the Borrower failed to make the monthly interest, principal and/or loan servicing payments due on the Loan.

33.     Pursuant to the Note, the Borrower's failure to make the required monthly payments when due constitutes an event of default under the Loan Documents.

34.     The Note provides that, among other things, upon an event of default by the Borrower, the lender has the right, among its other rights and remedies, to declare the entire principal amount of the Loan, interest owed thereon, and all other amounts due thereunder, immediately due and payable in full.

35.     As a result of the Borrower's default, UBS Bank has declared the entire amount of the Loan immediately due and payable in full.

36.     To date, despite notice and demand for payment, the Loan remains unpaid and the Borrower remains in default under the Loan Documents.

37.     As of December 31, 2020, the outstanding balance of the Loan totaled $177,278.60. Interest, default interest, late charges and other expenses, including, but not limited to, reasonable attorney's fees and court costs, continue to accrue on the Loan as set forth in the Loan Documents.

**E.     The Status of UBS Bank's Collateral**

38.     At or around the time that the Borrower defaulted under the Loan Documents, Mr. Familia closed the "Beans & Vines" restaurant located at 4799 Broadway in New York City, took down the Beans and Vines restaurant website (https://beansandvines.com/) and purported to cease the Borrower's ordinary business activities.

39. Upon information and belief, in connection with the foregoing, the Borrower transferred some or all of its assets, which comprise UBS Bank's Collateral, to B&V Express Corp for insufficient or no consideration.

40. Upon further information and belief, B&V Express Corp. has used and continues to use UBS Bank's Collateral in the operation of the "Beans & Vines Express" restaurant that remains open at 4842 Broadway in New York City.

41. Such conduct violates, among other things, the express terms of the Loan Documents. Any Collateral that is in the possession of B&V Express Corp. remains subject to UBS Bank's first priority security interest and lien therein, as well as UBS Bank's rights and remedies under the Loan Documents and/or applicable law.[1]

## FIRST COUNT
### (Breach Of The Loan Documents Against The Borrower)

42. UBS Bank repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

43. As more fully set forth above, the Borrower obtained the Loan in the principal amount of $240,000.00, which is evidenced by the Loan Documents.

44. UBS Bank is the lawful owner and holder of all of the Loan Documents, including, but not limited to, the Loan Agreement and the Note, and is entitled to enforce their provisions.

45. The Borrower failed to make the required payments of principal, interest and other amounts due under the Note.

---

[1] UBS Bank is reserving the right to amend its Complaint to assert claims against B&V Express Corp. for successor liability under the Loan Documents in the event that discovery reveals that B&V Express Corp. is the mere continuation of the Borrower and/or other information supporting such a successor liability claim.

46. The Borrower's failure to make the required payments of principal, interest and other amounts when due constitutes a breach of and default under the Loan Documents.

47. Despite notice and demand for payment, the Loan remains unpaid and the Borrower remains in default under the Loan Documents.

48. As a result of the Borrower's breach of and default under the Loan Documents, UBS Bank has been damaged.

49. As of December 31, 2020, there is due and owing from the Borrower to UBS Bank under the Note the total sum of $177,278.60.  Interest, default interest, late charges and other expenses, including, but not limited to, attorney's fees and court costs, continue to accrue on the Loan as set forth in the Loan Documents.

**WHEREFORE**, UBS demands judgment against the Borrower in an amount to be determined at trial, but not less than $177,278.60, plus unpaid accrued interest at the standard rate as provided in the Loan Documents, unpaid accrued interest at the default rate as provided in the Loan Documents, any additional late fees and other charges, collection and enforcement costs, including reasonable attorneys' fees and court costs, and such further relief as the Court deems just and proper.

## SECOND COUNT
### (Breach Of The Guaranty Agreement Against Mr. Familia)

50. UBS repeats the allegations of the foregoing paragraphs of the Complaint as if fully set forth at length herein.

51. As set forth more fully above, in connection with the extension of the Loan to the Borrower, Mr. Familia entered into the Guaranty Agreement.

52. UBS is the lawful owner and holder of all of the Loan Documents, including, but not limited to, the Guaranty Agreement, and is entitled to enforce their provisions.

53. As set forth above, as a result of the defaults by the Borrower, UBS Bank has declared the entire amount of the Loan immediately due and payable in full.

54. Despite demand, Mr. Familia has failed to make payment to UBS Bank of the amounts owed by the Borrower under the Note as required under the Guaranty Agreement.

55. The failure of Mr. Familia to make said payment constitutes a breach of and default under the Guaranty Agreement.

56. As a result of Mr. Familia's breach of and default under the Guaranty Agreement, UBS Bank has been damaged.

**WHEREFORE**, UBS demands judgment against Mr. Familia in an amount to be determined at trial, but not less than $177,278.60, plus unpaid accrued interest at the standard rate as provided in the Loan Documents, unpaid accrued interest at the default rate as provided in the Loan Documents, any additional late fees and other charges, collection and enforcement costs, including reasonable attorneys' fees and court costs, and such further relief as the Court deems just and proper.

## THIRD COUNT
### (Replevin Against The Borrower And B&V Express Corp.)

57. UBS repeats the allegations of the foregoing paragraphs of the Complaint as if fully set forth at length herein.

58. As set forth above, as security for the repayment of the Loan and the obligations under the Note, the Borrower granted a security interest in the Borrower Collateral as evidenced by the Security Agreement.

59. As further set forth above, as additional security for repayment of the Loan and the obligations under the Note, Mr. Familia granted a security interest in the Familia Collateral as evidenced by the Pledge Agreement.

60. Pursuant to the Security Agreement and the Pledge Agreement, upon default by the Borrower, UBS Bank has the right, among other things, to take possession of the Collateral.

61. As set forth above, the Borrower has defaulted under the Loan Documents.

62. Further, upon information and belief, the Borrower has transferred some or all of its assets, which comprise UBS Bank's Collateral, to B&V Express Corp for insufficient or no consideration.

63. Upon further information and belief, B&V Express Corp. has used and continues to use UBS Bank's Collateral in the operation of the "Beans & Vines Express" restaurant that remains open at 4842 Broadway in New York City.

64. Such conduct violates, among other things, the express terms of the Loan Documents. Any Collateral that is in the possession of B&V Express Corp. remains subject to UBS Bank's first priority security interest and lien therein, as well as UBS Bank's rights and remedies under the Loan Documents and/or applicable law.

**WHEREFORE**, UBS Bank demands judgment the Borrower and B&V Express Corp, individually, jointly and severally, as follows:

(a) granting replevin of the Collateral;

(b) directing the Borrower and B&V Express Corp. to assemble and deliver possession of the Collateral to UBS Bank;

(c) directing the Borrower and B&V Express Corp. to deliver to UBS Bank all records and documents relating to and constituting the Borrower's accounts receivable, and directing the Borrower and B&V Express Corp., as well as any persons acting in concert with them, to take no action to interfere with UBS Bank's collection of the accounts receivable;

(d) restraining the Borrower and B&V Express Corp. and their respective agents, affiliates, representatives, employees, attorneys or those in concert or participation with them from transporting, destroying, secreting, selling, encumbering, disposing of or removing any Collateral or books and records of the Borrower relating to the Collateral; and

(e) awarding UBS Bank such further relief as the Court deems just and proper.

## FOURTH COUNT
### (Unjust Enrichment Against B&V Express Corp.)

65. UBS repeats the allegations of the foregoing paragraphs of the Complaint as if fully set forth at length herein.

66. Upon information and belief, the Borrower has transferred some or all of its assets, which comprise UBS Bank's Collateral, to B&V Express Corp for insufficient or no consideration.

67. Upon further information and belief, B&V Express Corp. has used and continues to use UBS Bank's Collateral in the operation of the "Beans & Vines Express" restaurant that remains open at 4842 Broadway in New York City.

68. As a result of the foregoing, B&V Express Corp. has been unjustly enriched at UBS Bank's expense.

69. The circumstances are such that equity and good conscience require that B&V Express Corp. make full restitution to UBS Bank.

**WHEREFORE**, UBS demands judgment against B&V Express Corp. for damages in an amount to be determined at trial, prejudgment and post-judgment interest, costs of suit, including attorney's fees, and such further relief as the Court deems just and proper.

## FIFTH COUNT
### (Attorney's Fees And Costs of Collection Against The Borrower and Mr. Familia)

70. UBS repeats the allegations of the foregoing paragraphs of the Complaint as if fully set forth at length herein.

71. Pursuant to the Loan Documents, UBS Bank is entitled, among its other rights and remedies, to demand and collect from the Borrower all expenses, including reasonable attorney's fees and costs, incurred by UBS Bank in connection with collection of the amounts due under and/or enforcement of the terms of the Note and/or Security Agreement.

72. Pursuant to the Guaranty Agreement, Mr. Familia is obligated, among other things, to pay to UBS Bank all costs, including attorney's fees and costs, incurred by UBS Bank in connection with the collection of the amounts due under and/or the enforcement of the terms of the Note, Security Agreement, Guaranty Agreement and/or Pledge Agreement.

**WHEREFORE**, UBS Bank demands judgment against the Borrower and Mr. Familia, individually, jointly and severally, for all costs and expenses incurred by UBS Bank in connection with the collection of the amounts due under and/or the enforcement of the terms of the Note, Security Agreement, Guaranty Agreement and/or Pledge Agreement, including attorney's fees and costs, and such further relief as the Court deems just and proper.

Dated: January 29, 2021
New York, New York

/s/ Joshua S. Bratspies
SHERMAN WELLS SYLVESTER
 & STAMELMAN LLP
1185 Avenue of the Americas, 3rd Floor
New York, New York 10036
 (212) 763-6464

*Attorneys for Plaintiff UBS Bank USA*

4839-9123-5033, v. 2